[Crim. No. 1790.   First Appellate District, Division Two.—May 1, 1934.]

THE PEOPLE, Respondent, v. JACK B. RICHARDSON, Appellant.

Wallace S. Myers and Hilary H. Crawford for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

SPENCE, J.—Defendant was a prisoner committed to the state prison at San Quentin. While working under the surveillance of prison guards in a road camp in Butte County, he made his escape.. He was subsequently apprehended in Los Angeles County and returned to the prison at San Quentin. He was tried and convicted in the Superior Court in Marin County on the charge of escape and from the final judgment of conviction, he appeals.

The sole question raised by appellant is that of jurisdiction. He contends that ''The Superior Court of the County of Marin had no jurisdiction in this case for the reason that defendant had a constitutional right to be tried by a jury composed of persons from either the County of Butte where the alleged escape occurred or from the County of Los Angeles where defendant was apprehended.'' In our opinion this contention is without merit.

Section 787 of the Penal Code provides, ''The jurisdiction of a criminal action for escaping from prison is in any county of the state.'' This section has been held to apply to escapes from road camps as well as to escapes from within prison walls. (Bradford v. Glenn, 188 Cal. 350 [205 Pac. 449]; People v. Crider, 76 Cal. App. 101 [244 Pac. 113]; People v. Vanderburg, 67 Cal. App. 217 [227 Pac. 621].) It is therefore clear that the Superior Court of Marin County had jurisdiction under the terms of said section and that appellant's contention must fall if said section is constitutional.

Appellant's claim of unconstitutionality is based upon the provisions of article I, section 7, of our Constitution, which provides in part, ''The right of trial by jury shall be secured to all, and remain inviolate.'' This is substantially the same provision as was placed in our original Con-

stitution of 1849. (Art. I, sec. 3.) Appellant takes the position that the right to trial by jury, which was secured by these constitutional provisions, was the common-law right to trial by jury and that one of the essential attributes thereof was the right to a trial by jurors selected from the vicinage. He further takes the position that any statute purporting to confer jurisdiction upon the court of any county other than the county where the crime was committed, or the county where the defendant was apprehended is in violation of said constitutional guaranty and therefore void.

Appellant cites and relies upon *People* v. *Powell,* 87 Cal. 348 [25 Pac. 481, 11 L. R. A. 75]. The language of the first portion of the opinion in that case lends apparent support to appellant's contention, but we do not believe that said decision is conclusive. The Supreme Court there was considering section 1033 of the Penal Code. The court held that said section was unconstitutional in part but further held that even if the section was valid in its entirety, the showing made on the application for change of venue was insufficient. In other words, the decision rested upon two grounds. While that portion of the opinion relating to the constitutional question has never been expressly overruled by the Supreme Court, we believe that it has been impliedly repudiated by said court in *People* v. *Prather,* 134 Cal. 386 [66 Pac. 483], and *Bradford* v. *Glenn,* 188 Cal. 350 [205 Pac. 449]. Furthermore, a petition for a writ of prohibition entitled, *Vincent* v. *Superior Court,* San Francisco No. 15081, was recently filed in the Supreme Court. The petitioner in that proceeding is the appellant on a companion appeal now pending in this court. (Crim. No. 1791 [*People* v. *Vincent*], *post,* p. 775 [32 Pac. (2d) 436].) Both said Vincent and appellant Richardson escaped from the road camp in Butte County and both questioned the jurisdiction of the Superior Court of Marin County. After the case against Vincent had been set for trial in that court over his objection, he applied to the Supreme Court for a writ of prohibition. In support of his petition he raised the identical question presented on this appeal and he cited and relied upon the opinion in *People* v. *Powell, supra.* Said petition was denied by the Supreme Court on January 15, 1934, and said denial must be interpreted as a ruling sustaining the

validity of said section 787 of the Penal Code. It is true, as pointed out by appellant, that the case of *People* v. *Powell, supra,* was referred to in *People* v. *Martin,* 188 Cal. 281, at page 288 [205 Pac. 121, 21 A. L. R. 1399], but the first-named case was merely distinguished in the last-mentioned opinion. It may also be noted that within a short time after the case of *People* v. *Martin, supra,* was decided, the Supreme Court handed down its opinion in *Bradford* v. *Glenn, supra,* in which the validity of said section 787 of the Penal Code was assumed.

We believe that the language found in the opinion in *Matter of McDonald,* 20 Cal. App. 641 [129 Pac. 957], indicates the correct interpretation of the right to trial by jury as secured by our Constitution. The court there had under consideration section 785 of the Penal Code. The court said on page 642: "It is claimed by petitioner that the section above referred to is unconstitutional as in derogation of the right to trial by jury, which by the Constitution remains inviolate; that this right of trial by jury guarantees a common-law jury, which is by a jury of his peers of the vicinage or county where the crime is alleged to have been committed. The position taken by petitioner as to his right to a trial by a jury of his peers in the county or vicinage is unassailable. The word 'vicinage' is subject to various definitions mainly depending upon the sense in which it is used. The Standard Dictionary defines it as the neighborhood, or, as applied to juries, 'in modern use, a jury of the county wherein trial is had'. We are of opinion, therefore, that if the statute guarantees to the accused the right of trial by jury in the place by law designated as the place for trial, it confers upon him the right contemplated by the Constitution. The authorities cited to the effect that the trial must be in the county where the offense was committed, have no application in this state, where under the Constitution the place of trial is subject to legislative determination." Under this view appellant's constitutional right to trial by jury was not invaded by the statute which related merely to the place of trial.

We are fully aware of the fact that a different interpretation of the so-called common-law right to trial by a jury of the vicinage is to be found in the language of some of

the decisions. We believe, however, that these decisions hark back to the days of the ancient common law when the accused could only be tried by a jury selected from the county in which the offense had been committed. In early times the rule was so strict that if an offense was committed partly in one county and partly in another, such offense was not punishable at all. (See *People* v. *Powell, supra,* p. 258.) But the common-law right to trial by jury which was guaranteed by our Constitution was not the right to trial by jury as known to the ancient common law, but was the right to trial by jury as it existed at common law at the time that the Constitution of this state was adopted. (*People* v. *Martin, supra,* p. 285; *Ex parte Wong You Ting,* 106 Cal. 296, 299 [39 Pac. 627].) When we refer to the ''common law'' at the time that our Constitution was adopted we include the whole body of the common law of England as it stood at that time influenced by statute. (*Martin* v. *Superior Court,* 176 Cal. 289, 293 [168 Pac. 135, L. R. A. 1918B, 313].) As so influenced by statute, the common-law right to trial by jury no longer had as one of its essential attributes a right to trial by a jury selected from the vicinage or county where the crime was committed. It is conceded that statutes had been enacted in England permitting the prosecution of many crimes either in the county where the crime had been committed or in the county where the accused had been apprehended. It also appears that statutes had authorized the prosecution of certain crimes in any county where the accused was in custody. We need only cite by way of example the statute of 1828 relating to the crime of bigamy, which statute is quoted on page 287 of *People* v. *Martin, supra,* as follows: ''Any such offense may be dealt with, enquired of, tried, determined, and punished in the county where the offender shall be apprehended or be in custody, as if the offense had been actually committed in that county.'' These statutes constituted a recognition of the fact that, owing to the development of the trial by jury and the resulting changes in the nature thereof, many of the reasons existing in earlier times for requiring the trial to be had in the place where the crime had been committed had ceased to exist. We therefore conclude that the real essential attributes of the so-called common-law jury

trial were at all times "number, impartiality and unanimity" (*People* v. *Peete*, 54 Cal. App. 333, 366 [202 Pac. 51]); that at the time that our Constitution was adopted the only right which the accused had under the common law of England with respect to the place from which the jury should be selected was a right to have the jury selected from the vicinage or county which might be fixed by law for the place of trial; and that in the present case appellant's right to a jury trial as contemplated by our Constitution was secured to him when he was accorded a trial by a jury which possessed the essential attributes above mentioned and which was duly selected from the county in which the cause was tried pursuant to the statute fixing the place of trial.

This view is strengthened by a consideration of our Constitution as a whole. There are no express provisions therein designating the place of trial of criminal actions except those relating to prosecutions for libel (art. I, sec. 9), and there are no express limitations upon the power of the legislature to fix the place of trial in criminal actions generally. Furthermore, we find that the legislature was prohibited from passing any "local or special laws" providing for "changing the venue in civil or criminal actions" (art. IV, sec. 25) and we must conclude from the very expression of that limitation that the legislature is possessed of the power to pass general laws for that purpose. (5 Cal. Jur., p. 587.)

From what has been said it follows that section 787 of the Penal Code was a valid enactment and that appellant was properly tried and convicted in the Superior Court of Marin County.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 16, 1934.