[Civ. No. 9479.   Third Dist.   June 20, 1958.]

OPAL COEWITH SCHINDLER, Petitioner, v. SUPERIOR COURT OF MADERA COUNTY, Respondent.

[Civ. No. 9481.   Third Dist.   June 20, 1958.]

CLAUDE WILLIAM SCHINDLER, Petitioner, v. SUPERIOR COURT OF MADERA COUNTY, Respondent.

Roy E. Wolfe and Mayes & Courtney for Petitioners.

Edmund G. Brown, Attorney General, Doris H. Maier and Lloyd Hinkelman, Deputy Attorneys General, for Respondent.

WARNE, J. pro tem.*—Petitioners in each of the above-entitled matters apply for writs of mandate to compel the respondent court to order the pretrial inspection of certain statements made by each to the district attorney or his representatives, also of certain medical specimens, and of the reports made by the autopsy surgeon concerning his findings as the result of an autopsy performed on the body of their deceased daughter. They also seek authorization to engage a pathologist of their own choice at county expense and to have the body of the child exhumed for further autopsy examination.

The petitioners are husband and wife and by information have been jointly charged with the murder of their 4-year-old daughter, Sandra. As the facts and the law applicable in each matter are practically the same and are contemporaneously before this court, the two petitions have been consolidated for the purpose of this opinion.

### PETITION OF OPAL COEWITH SCHINDLER

The petitioner sought an order from the respondent court to permit her or her attorney to examine any statements made by her to the district attorney or his representatives with respect to the death of her daughter, Sandra Marie Schindler, on the ground that she cannot remember her previous statements because of emotional disturbance at the time of the death of the child. Her counsel, although he is not representing petitioner's husband, at the same time demanded that the district attorney also permit him to examine the statements made by petitioner's husband concerning the death of said child, based upon petitioner's allegations on information and belief that such statements implicated the petitioner, that they were untrue, and that petitioner needed the statements to prepare for trial for the purpose of impeachment. The district attorney refused both demands. She also petitioned the respondent court for authorization to engage the services of a pathologist at county expense to examine the medical material concerning the death of said child. (Respecting this latter matter, the court ". . . ordered that the post-mortem doctor may be employed as a witness at this trial at the expense of the County of Madera provided such charge is legal.")

Counsel for petitioner further alleges that when he attempted to discuss the pathological findings with the autopsy surgeon he was informed by said autopsy surgeon that the

---

*Assigned by Chairman of Judicial Council.

district attorney had instructed him (the autopsy surgeon) not to discuss such evidence with petitioner or her counsel.

It was also alleged that counsel for petitioner filed a motion for a court order permitting him to engage the services of a pathologist to examine the body of the child and for an order that the body of the child be exhumed for the purpose of permitting said pathologist to perform an autopsy. All of said motions were supported by affidavits, and though opposed by the district attorney, no counteraffidavits were filed.

### PETITION OF CLAUDE WILLIAM SCHINDLER

Counsel for the petitioner alleges that he demanded that the district attorney permit him to examine the petitioner's statements given to the district attorney or his representatives with respect to the death of his daughter, Sandra Marie Schindler. These statements were demanded because petitioner could not remember what statements were made due to his emotional disturbance at the time of the death of the child. Counsel for petitioner at the same time demanded that the district attorney also permit him to examine the statements made by Opal Coewith Schindler based upon petitioner's allegations on information and belief that such statements implicated petitioner, that they were untrue, and that he could not impeach them at the trial unless he knew their contents. The district attorney refused both demands. Counsel further alleges that when he attempted to discuss pathological findings with the autopsy surgeon, he was informed by said autopsy surgeon that he could not do so unless and until he was so instructed by the district attorney.

It is also alleged that he moved the respondent court for an order permitting him to join in the motions made by Opal Coewith Schindler for an examination of the statements made by each of them to the prosecution or its representatives and for a court order for authorization to incur necessary expenses in engaging the services of a pathologist, which costs could be charged to the county. Both of said motions were supported by the affidavit and though opposed by the district attorney, no counteraffidavits were filed. All of said motions were denied.

Since no counteraffidavits were filed, factually the matters averred in each petition were admitted. (*Walker* v. *Superior Court*, 155 Cal.App.2d 134, 136 [317 P.2d 130].)

We have concluded that both petitioners have made out a case entitling each to mandamus to compel the pretrial inspec-

tion of his or her own statements made to the district attorney and his representatives.

In *Powell* v. *Superior Court,* 48 Cal.2d 704 [312 P.2d 698], it was said: "As grounds for relief, petitioner alleges the denial by the trial court of his motion for an order authorizing petitioner and his attorney to inspect and make copies of a signed statement of petitioner made in the office of a chief of police and 'also for the typewritten transcript of the tape recording made' some five days later in the same police office. It is further alleged in the petition for the writ that the motion 'was supported by affidavits of your petitioner and his attorney, which contained allegations that the defendant was not able to recall, nor was he able to relate to his attorney the things contained in the aforesaid statements. That such documents may be necessary for the defendant [petitioner] to refresh his recollection; that the evidence contained in the statements is material to the issues of liability, if any, of the defendant, and the statements . . . would be admissible at the time of trial, and that no copies of the above statements have been given to the defendant. . . . No affidavits were filed on behalf of the District Attorney or the Chief of Police . . .' Petitioner further alleges, and respondents admit, that the motion was denied on the ground, among others, that in a criminal proceeding the accused is not entitled to a pretrial inspection of his written confession."

Upon the above facts, the court issued a writ of mandamus requiring the respondent court to set aside its order denying the petitioner an inspection of the documents in question and ordered that it issue an appropriate order of inspection with the right to take copies as sought.

In the instant cases, the facts upon which petitioners base their right to a pretrial inspection of the statements they made to the district attorney or his representatives are as persuasive as the facts in the Powell case. Here it is alleged that the demand was made upon the district attorney to examine the petitioners' statements given to him or his representatives with respect to the death of their child. The statements were demanded because the petitioners could not remember what statements were made and because of his or her emotional disturbance at the time of the death of the child. It further appears that these statements were taken at the time when the petitioners were without the benefit of counsel; that knowledge of the contents of said statements is necessary in order that they may prepare their respective defenses to

the charge of murder. Under such circumstances, we believe that each petitioner is entitled to inspect and make copies of his or her own statements made to the district attorney or his representatives.

As was held in the Powell case, ". . . to deny inspection of defendant's statements would likewise be to lose sight of the objective of ascertainment of the facts, and would be out of harmony with the policy of this state that the goal of criminal prosecutions is not to secure a conviction in every case by any expedient means, however odious, but rather, only through establishing the truth upon a public trial fair to defendant and the state alike. In the recent case of *Dowell* v. *Superior Court* (1956), 47 Cal.2d 483 [304 P.2d 1009], this court granted mandamus to compel inspection prior to trial of a personal injury action, of a statement taken from plaintiff in the hospital by defendant company's claims investigator the day after plaintiff had been injured. There, as here, plaintiff averred that he had forgotten what he had said in the statement. In holding that he was entitled to inspect and take a copy of the statement this court noted that the ' "trend of judicial decisions is to relax the rules which relate to the taking of evidence by ancillary proceedings of which the inspection of documents is one method . . ." [citations],' and commented further 'that the principles of equity enter into the determination of an application for discovery and also in a mandamus proceeding to compel appropriate action.' " ▮ While the court held that section 1000 of the Code of Civil Procedure has been held inapplicable to criminal proceedings (and cited cases), it further said: ". . . it nevertheless is a widely recognized rule that application for pretrial inspection of a signed confession or admission or transcript of statements of an accused may be made by the latter and is addressed to the sound judicial discretion of the trial court, which has inherent power to order such an inspection in the interest of justice. (See *State* v. *Cicenia* (1951), 6 N.J. 296 [78 A.2d 568, 570-571 [6]] ; *Shores* v. *United States* (1949), 174 F.2d 838, 844.) In the Cicenia case the court quoted and adopted the rule and the reasoning, with respect to the confession and statements of defendant himself, expressed in *State* v. *Haas* (1947), 188 Md. 63 [51 A.2d 647, 653], as follows: 'There can be no doubt that the recognition of the right in a trial court to permit the defendant to examine his confession in advance of the trial was not recognized at common law. But law is a growth and a great many matters, commonplace to us now,

were not thought of many years ago. . . . [T]he tendency in the courts of this country is to permit discretion in the trial judge. The argument made against any such discretion is based upon a fear that the State, which is charged with the prosecution of crime, may be hampered in its duty by the disclosure of its evidence to those charged with offenses. Whatever merit that argument has as applied to a situation where it is contended that the accused has a *right* to inspect the evidence, it has no application, we think, to a situation where the trial judge in each case and on each application, determines what should be done in the interest of justice. There are cases in which it would be clearly unjust to deny such an application and, on the other hand, cases are conceivable in which it might improperly hamper the prosecution to grant such an application.' [Citing cases.]'' (Pp. 707-708.) In the instant case we feel that the petitioners are entitled to inspect the statements which they made and also to make copies thereof.

■ We have concluded that petitioners are not entitled to inspect and copy statements made by each other to the district attorney. In her affidavit petitioner Opal Coewith Schindler alleges that she is informed and believes that her husband made certain statements to the district attorney and his representatives and that such statements implicated her in the killing and that the statements are material. She then alleges that she cannot properly prepare for trial without knowledge of the contents of these statements. Since the petitioner's affidavit is based on information and belief, presumably any statements made by him to the district attorney were made outside her presence and would not be admissible against her. (*People* v. *Curtis*, 106 Cal.App.2d 321 [235 P.2d 51].) The petitioner, Claude William Schindler, in his petition alleges that he moved the trial court for permission to inspect the statements made by his wife, Opal, to the district attorney. However neither his motion nor the affidavit in support thereof reveals that he requested the trial court to make an order permitting inspection of Opal's statements. Further, Opal's statements, having been made out of his presence, would not be admissible against him. The respondent court did not abuse its discretion in not permitting inspection of the other party's statements.

■ The petitioner, Claude William Schindler, seeks a copy of the autopsy report on the ground that this report is necessary to prepare his defense, and it appears that he has

not been furnished with a copy thereof. In *Walker* v. *Superior Court, supra,* this court determined that an autopsy report is a public record which a citizen may inspect. However, in the Walker case the petitioner had made a demand upon the coroner that he be allowed to inspect the report, which demand was refused. Here the petitioner failed to make such a request of the coroner. Presumably if such request had been made, it would have been granted. Without first making such a request, petitioner's motion to inspect was properly denied.

■ Both petitioners have requested that specimens and samples taken by the autopsy surgeon be made available to the defense. It appears that these specimens have been preserved and are in the possession of the autopsy surgeon. It also appears that the body had been embalmed and had been buried for two months at the time of the hearing on petitioners' motions. Apparently these specimens and samples of tissue taken from the body of the deceased tend to show the cause of death. At the preliminary examination the autopsy surgeon testified that death was due to shock as the result of a whipping or beating of the child. It may be that an independent examination of these specimens by another qualified pathologist may indicate that the death of the child was not due to the blows received, or at least may tend to refute that conclusion reached by the autopsy surgeon. These samples and specimens therefore should be made available to the petitioners. (*Walker* v. *Superior Court, supra.*) Both petitioners have alleged that they have attempted to discuss the findings of the autopsy with the autopsy pathologist and to examine any reports and other data which he has in his possession, but that he has refused to discuss the autopsy findings on the ground that he has been instructed by the district attorney not to do so. ■ This court, in *Walker* v. *Superior Court, supra,* ruling on a similar question, stated at page 140: ". . . we do not think that the prosecution or the sheriff may order a witness not to talk to the defendant or his counsel. Diaz has refused to talk only because the sheriff ordered him not to and we are of the opinion that it would be proper for the court to entertain a motion to compel the sheriff to annul his order to Diaz. Of course, Diaz did not have to obey the order of the sheriff but as a practical matter such an order can be, and was here shown to be, an effective way of keeping a witness's mouth closed. Since the order came from a person connected with the state, we are of the opinion that a court can and should order that person to cease interfering with

defense counsel's right to interview a witness.'' The language there is applicable in the instant cases and the court should have ordered the district attorney to cease interfering with the defense counsels' right to interview witnesses.

Lastly we have concluded that the court did not abuse its discretion in refusing to grant petitioners authority to employ a pathologist at the county's expense. The question of the appointment of experts at county expense is a matter solely within the discretion of the trial court. (Pen. Code, § 987a; *People* v. *McCracken,* 39 Cal.2d 336 [246 P.2d 913]; *People* v. *Rickson,* 112 Cal.App.2d 475 [246 P.2d 700]; *People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469].) The denial by the trial court of the appointment of such experts does not constitute denial of due process of law. (*United States* ex rel. *Smith* v. *Baldi,* 344 U.S. 561 [73 S.Ct. 391, 97 L.Ed. 549]; *McGarty* v. *O'Brien,* 188 F.2d 151.) However, as previously noted, the court did order that the post-mortem doctor may be employed as a witness at the trial at the expense of the county, providing such charge is legal.

We conclude that peremptory writs of mandate should be issued requiring the respondent court to set aside its orders denying petitioners the right to inspect and make copies of their own statements made to the district attorney and his representatives; that the district attorney be ordered to cease interfering with defense counsels' right to interview witnesses, and in particular the autopsy surgeon, and that the medical specimens obtained from the body of the deceased child as a result of the autopsy be made available for examination by a pathologist of petitioners' own choice.

Let the writs issue.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied July 18, 1958.